**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **SETH GOODWIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 3:11-cv-00306** |
| | ) | |
| **v.** | ) | **Judge Nixon** |
| | ) | **Magistrate Judge Knowles** |
| **NISSAN NORTH AMERICA, INC.,** | ) | |
| | ) | **JURY DEMAND** |
| **Defendant.** | ) | |

<u>**ORDER**</u>

Pending before the Court is Defendant Nissan North America, Inc.'s Motion for

Sanctions Based on Spoliation of Critical Evidence by Plaintiff ("Motion") (Doc. No. 10), filed

with a supporting Memorandum (Doc. No. 11) and several exhibits (Doc. Nos. 14-1 to 14-4).

Plaintiff Seth Goodwin has filed a Response in Opposition (Doc. No. 16), along with several

exhibits (Doc. Nos. 17-1 to 17-6), to which Defendant has filed a Reply (Doc. No. 21), also filed

with multiple exhibits (Doc. Nos. 21-1 to 21-4).  Defendant's Motion is hereby **GRANTED** on

the conditions given herein.


**I.    BACKGROUND**

Plaintiff alleges that, on April 10, 2009, he purchased a 2009 Nissan Titan, manufactured

and warranted by Defendant, from Team Nissan in New Jersey.  (Doc. No. 1 ¶ 4.)  Plaintiff

alleges that, immediately after purchasing the vehicle, he noticed "an abnormal vibration when

driving at highway speeds."  (*Id.* ¶ 12.)  Plaintiff allegedly attempted to have the vehicle repaired

on numerous occasions in both New Jersey and Tennessee (*id.* ¶¶ 13-30), but alleges that the

"vehicle continues to exhibit defects and/or conditions . . . which substantially impair its use,

value and/or safety" (*id.* ¶ 31).  As a result, on March 31, 2011, Plaintiff filed suit against

Defendant.  (*Id.*)  Plaintiff brings claims for violation of the Tennessee Lemon Law, the New

Jersey Motor Vehicle Warranty Act, the Magnuson-Moss Federal Trade Commission Act

("Magnuson-Moss"), the Tennessee Uniform Commercial Code (UCC), and the Tennessee

Consumer Protection Act (TCPA).  (*Id.* ¶¶ 32-87.)

Defendant asserts that Plaintiff traded in the vehicle in or around July of 2011, and failed

to advise Nissan that he had done so until October 21, 2011.  (Doc. No. 10 at 1.)  Accordingly,

on December 19, 2011, Defendant filed its Motion seeking sanctions against Plaintiff for

spoliation of the vehicle (*id.*), along with a supporting Memorandum (Doc. No. 11) and several

exhibits (Doc. Nos. 14-1 to 14-4).  On January 3, 2012, Plaintiff filed a Response in Opposition

(Doc. No. 16), along with several exhibits[1] (Doc. Nos. 17-1 to 17-6), to which Defendant filed a

Reply (Doc. No. 21), accompanied by multiple exhibits (Doc. Nos. 21-1 to 21-4).


## II.  LEGAL STANDARD

A district court has "broad discretion in crafting a proper sanction for spoliation" of

evidence.  *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009).  The sanction imposed by a

court "should serve both fairness and punitive functions," and "the severity of a sanction may,

depending on the circumstances of the case, correspond to the party's fault."  *Id.* at 652-53

(citation omitted).  Examples include "dismissing a case, granting summary judgment, or

instructing a jury that it may infer a fact based on lost or destroyed evidence."  *Id.* at 653

(citation omitted).

---

[1] In its Reply, Defendant notes that Plaintiff's exhibits were actually filed on January 4, 2012, one day past the
relevant deadline.  (Doc. No. 21 at 2.)  Defendant thus argues that the exhibits should not be considered by the
Court.  (*Id.*)  The record reflects that the Response was filed at 11:46 PM on January 3, 2012 (Doc. No. 16), and the
exhibits were filed less than twenty minutes later, at 12:14 AM on January 4, 2012 (Doc. No. 17).  The Court
declines Defendant's invitation to punish Plaintiff for what amounts to a fifteen-minute delay in filing attachments
to a timely filed response.

There are several factors that must be considered by a court weighing whether to impose sanctions against a party who has spoliated evidence in a case:

> A party seeking sanctions for spoliation must show: (1) that the party having control over the evidence had an obligation to preserve the evidence at the time it was destroyed; (2) that the evidence was destroyed with a "culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the claims and defenses of the parties.

*Level 3 Commc'ns, LLC v. Floyd*, No. 1:09-0082, 2011 U.S. Dist. LEXIS 30427, at *28 (M.D. Tenn. Mar. 22, 2011) (quoting *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010)).

## III. ANALYSIS

In its Motion, Defendant first argues that "the vehicle itself is the most crucial piece of evidence" in this case. (Doc. No. 11 at 6.) Accordingly, Defendant contends that spoliation sanctions are proper because "Plaintiff breached his duty to preserve evidence that he knew or, at the very least, should have known was relevant to anticipated litigation." (*Id.* (citation omitted).) In particular, Defendant asserts that the parties' anticipated discovery included examination of the vehicle, something Plaintiff had already done using his own expert witness. (*Id.* at 6-7.) Defendant also notes that Plaintiff did not inform Defendant that he no longer had possession of the vehicle until months after he had traded in the vehicle. (*Id.* at 7.)

Defendant thus argues that Plaintiff's claims should be dismissed. (*Id.* at 7-9.) Defendant contends that dismissal is an appropriate sanction because it is unable to examine the vehicle and provide its own expert testimony regarding the condition of the vehicle, whereas Plaintiff obtained an expert who examined and produced a report on the vehicle. (*Id.* at 7-8.) As a result, Defendant argues that there is a great risk that an erroneous judgment in Plaintiff's favor

will issue.  (*Id.* at 8.)  Defendant states that it cannot, "and should not have to, rely on opinions formed by non-employees, representatives, or agents in defending itself in this case," referring to the reports prepared in conjunction with the repairs made on Plaintiff's vehicle.  (*Id.*) Additionally, Defendant asserts that dismissal is appropriate in order to "deter other parties from engaging in spoliation in cases such as this."  (*Id.*)  Defendant contends that the only sanction other than dismissal that could restore Defendant "to the same position it would have been in absent the wrongful destruction of the subject vehicle by Plaintiff" would be to impose multiple sanctions, including "an adverse presumption instruction to the jury, barring Plaintiff from presenting evidence opposing [Defendant's] assertions that the vehicle was not defective and did not suffer from substantial nonconformity, and would prevent Plaintiff's expert witness from testifying about the examination of the vehicle or any opinions formed thereof."  (*Id.* at 9.)  Even if the Court imposes these sanctions rather than dismissing the case, Defendant contends that it would be entitled to summary judgment.  (*Id.*)

Plaintiff first responds by asserting that the vehicle is not the most important evidence in this case.  (Doc. No. 16 at 4.)  Rather, Plaintiff contends that the most relevant pieces of evidence for his claims under both Tennessee's and New Jersey's lemon laws are the repair invoices relating to the vehicle.  (*Id.*)  Additionally, even if the vehicle were the most important piece of evidence, Plaintiff argues that Defendant's representatives had the opportunity to inspect the vehicle on numerous occasions.  (*Id.* at 5.)  Plaintiff further argues that he resorted to Defendant's Informal Dispute Resolution Program prior to initiating this lawsuit, in accordance with Tennessee's and New Jersey's lemon laws as well as Magnuson-Moss, and thus "Defendant was on notice and could have appeared for this inspection."  (*Id.*)

Next, Plaintiff argues that spoliation sanctions are inappropriate because he "has not destroyed, mutilated, concealed or altered the subject matter of this lawsuit." (*Id.* at 6.) Rather, Plaintiff asserts that he "merely traded in the subject vehicle after Defendant, through its authorized dealers, refused to cure," as he "believed his continued operation of the vehicle was unsafe for both him and other drivers," and thus, to the best of his knowledge, the "vehicle is still in existence and Plaintiff has taken no action to the contrary." (*Id.*) Plaintiff argues that he informed Defendant of the authorized dealership where he traded in the vehicle and thus Defendant could have obtained information regarding the vehicle's whereabouts on its own, including during the two months between the time Plaintiff informed Defendant that he had traded in the vehicle and the filing of the instant motion. (*Id.* at 7.)

Lastly, Plaintiff argues that dismissing this case as a sanction for his actions would be unwarranted. (*Id.*) Plaintiff contends that Defendant is not "fatally prejudiced" due to the fact he traded in the vehicle, as "Defendant's representatives have inspected the vehicle on at least seven occasions," "Defendant's authorized dealership has also been in possession of the subject vehicle," and "[e]ven if the vehicle were no longer in existence, Defendant could introduce into evidence records from repair visits with its authorized dealerships, and call upon its own authorized repair technicians to testify at any proceedings." (*Id.* at 8.) Furthermore, Plaintiff asserts that "a present defect is not required to maintain a lemon law or breach of warranty action," and thus "an inspection to determine if there is a present defect in the vehicle" is not necessary. (*Id.*) Plaintiff argues that dismissing his case would not deter other parties from spoliation, and that "[i]f it did, it would have the negative effect of encouraging consumers to continue operating unsafe vehicles on our roadways." (*Id.* at 9.) Plaintiff also asserts that there is a low risk of an erroneous judgment in his favor, as there is other evidence Defendant could

use to support its case, including the opinions of "its own representative's [*sic*] and agent's [*sic*]." (*Id.* at 10.) Additionally, Plaintiff argues that Defendant has not shown that his actions warrant the sanction of an adverse presumption instruction to the jury (*id.* at 10-12), and "suggest[s] that a minimal sanction be imposed in light of the safety risks of the vehicle" such that "Plaintiff's expert's testimony only be barred to the extent that [the expert] not be permitted to discuss his inspection of the subject vehicle," as the expert's "report is primarily focused on the reasonableness of Defendant's repair efforts" (*id.* at 12).

In its Reply, Defendant argues that none of its employees, representatives, or agents have inspected the vehicle, as "[d]ealerships are wholly independent entities" and Defendant "does not retain, hire or control the individuals employed at independent dealerships." (Doc. No. 21 at 3.) Thus, Defendant argues that "any actions taken by independent dealerships, or their employees, can not [*sic*] and should not be imputed to" Defendant. (*Id.*) Defendant argues that the same is true of any inspection conducted as a part of Defendant's Informal Dispute Resolution Program, as the Program, and thus the inspection conducted as a part of the Program, is controlled by the Better Business Bureau. (*Id.* at 3-4.) Next, Defendant asserts that, after Plaintiff traded in the vehicle—an event Defendant now contends took place on June 15, 2011, based on a declaration of Jason Seiber, the General Manager of Victory Nissan West—the vehicle sustained significant damage and thus "was never in the same condition as it was when [it] was traded-in by" Plaintiff. (*Id.* at 4-6.) As a result, relying on a declaration of Rodger Gettler, a Dealer Technical Specialist for Defendant, Defendant contends that it will now be impossible to determine the source of the vibration, and it is impossible to make such a determination by relying solely on old repair orders. (*Id.* at 6-8.)

Defendant then reasserts that the vehicle itself is the most important piece of evidence in this case, as Plaintiff must establish that the vehicle suffered from a nonconformity or defect under both Tennessee's and New Jersey's lemon laws as well as under Magnuson-Moss. (*Id.* at 8-9.) Defendant further argues that an inspection of the vehicle would similarly be relevant to Plaintiff's UCC and TCPA claims, as well as to affirmative defenses under the lemon laws and Magnuson-Moss. (*Id.* at 9-10.) Defendant rebuts Plaintiff's assertion that the repair orders in this case are the most essential piece of evidence, as the orders "constitute inadmissible hearsay," given that they "were, in fact, prepared by third parties – employees of various independent dealerships." (*Id.* at 11.) Additionally, Defendant argues that Plaintiff, in arguing that Defendant should be able to locate the vehicle itself, improperly attempts to shift the burden regarding the inspection to Defendant, as Plaintiff has the burden of proving the substance of his allegations. (*Id.* at 11-12.)

Lastly, Defendant contends that it has satisfied the requirements for an award of sanctions, including meeting the test provided by Plaintiff in his Response. (*Id.* at 12.) More specifically, Defendant argues that Plaintiff, who had sole control over the vehicle, had an obligation to preserve it, and failed to do so. (*Id.* at 12-13.) Additionally, Defendant contends that Plaintiff spoliated the vehicle with a culpable state of mind, as he traded in the vehicle after filing his Complaint, having had his own expert inspect the vehicle, and knowing that Defendant had not had the opportunity to inspect the vehicle. (*Id.* at 13-14.) Defendant argues that Plaintiff's claims of safety concerns were never before raised by Plaintiff in any pleadings or repair orders. (*Id.* at 14.) Finally, Defendant reasserts its argument that it has been prejudiced due to its inability to inspect the vehicle, and that dismissal is an appropriate sanction in this case. (*Id.* at 15-18.)

As an initial matter, the Court believes that many of the parties' arguments raise issues that go beyond the scope of the Court's present inquiry. For example, the reports that Plaintiff has provided, which summarize repair work on the vehicle, appear to raise issues of agency and admissibility, as noted by Defendant. However, the question of whether the actions of the various dealerships that repaired Plaintiff's vehicle can be imputed to Defendant is not before the Court at this time, and neither is the admissibility of the reports. Rather, those are issues that would need to be resolved following discovery, in a motion for summary judgment after being fully briefed by the parties or at trial, should there be outstanding questions of witness credibility. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment."). The Court is similarly hindered by clear factual disputes between the parties. More specifically, part of the inquiry when ruling on a motion for sanctions involves determining whether the party in question acted with a "culpable state of mind." *Level 3 Commc'ns*, 2011 U.S. Dist. LEXIS 30427, at *28 (quoting *Beaven*, 622 F.3d at 553). The Court cannot determine whether Plaintiff had such a "culpable state of mind" when he turned in his vehicle without considering his assertion that he did so due to safety concerns. Defendant disputes this claim and thus resolving this factual question would necessarily involve an evaluation of Plaintiff's credibility, which is a function reserved for the factfinder at trial. *See Anderson*, 477 U.S. at 255.

Accordingly, the Court is reluctant to impose the harsh sanctions sought by Defendant in its Motion, as too much is currently in dispute for the Court to determine that Plaintiff merits such punitive treatment. Nevertheless, the Court notes that sanctions "should serve both fairness and punitive functions," *Adkins*, 554 F.3d at 652, and thus the Court finds it necessary to address

the unfairness that has resulted from Plaintiff's conduct. It appears quite obvious to the Court that the state of Plaintiff's former vehicle is relevant to both his claims and Defendant's affirmative defenses. Furthermore, because Plaintiff traded in the vehicle and it was allegedly thereafter damaged, Defendant has been permanently deprived of the opportunity to ascertain what the vehicle's condition was at the time Plaintiff possessed the vehicle. Accordingly, out of a concern for fairness, the Court believes that Defendant and Plaintiff should be able to proceed on an equal footing, and thus the Court will adopt Plaintiff's suggested sanction of excluding any testimony from Plaintiff's expert regarding the expert's inspection of the vehicle. The Court sees no need to exclude any other testimony by the expert—specifically, Plaintiff's expert's evaluation of the information contained in the repair reports—as Defendant still has the opportunity to have an expert conduct similar analysis, even in the absence of the vehicle.

Beyond this, the Court finds it inappropriate to further sanction Plaintiff because many of Defendant's arguments raise issues that go to the merits of Plaintiff's case, and the Court is not charged with ruling on the merits of Plaintiff's claims at this time. To the extent that Plaintiff's decision to trade in his car will negatively impact his ability to succeed on his claims, the Court believes that the consequences of that decision will unfold at a later time, either in the event that Defendant files a motion for summary judgment or, potentially, at trial. As such, the Court finds it unnecessary to take the step of dismissing Plaintiff's claims outright or granting summary judgment in Defendant's favor at this stage of the case.

Accordingly, Defendant's Motion is **GRANTED** insofar as the Court hereby sanctions Plaintiff for failing to maintain possession of his vehicle by barring any testimony from Plaintiff's proffered expert regarding the expert's independent examination of the vehicle.

**IV.  CONCLUSION**

For the reasons given above, Defendant's Motion is **GRANTED** to the extent that, in arguing the merits of his claim, Plaintiff will be prohibited from using the testimony of his expert witness concerning the expert's independent examination of Plaintiff's vehicle.

It is so ORDERED.

Entered this the _____**15ᵗʰ**_____ day of June, 2012.

_____

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT