IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SETH GOODWIN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:11-cv-00306 |
| | ) | |
| v. | ) | Judge Nixon |
| | ) | Magistrate Judge Knowles |
| NISSAN NORTH AMERICA, INC., | ) | |
| | ) | JURY DEMAND |
| Defendant. | ) | |

## ORDER

Pending before the Court is Defendant Nissan North America, Inc.'s Motion for
Summary Judgment ("Motion"). (Doc. No. 36.) Also pending before the Court is Defendant's
Motion to Exclude Certain Opinion Testimony of Scot A. Turner ("Motion to Exclude"). (Doc.
No. 34.) For the reasons stated below, Defendant's Motion for Summary Judgment is
**GRANTED** and the Motion to Exclude is **TERMINATED AS MOOT**.

I.    **BACKGROUND**

    A.  *Factual History*[1]

    Plaintiff Seth Goodwin is a citizen of Tennessee and Defendant Nissan North America,
Inc. is a corporation with its principal place of business located in Franklin, Tennessee. On April
10, 2009, Plaintiff purchased a new 2009 Nissan Titan (the "Vehicle") from Team Nissan
("Team"), an authorized Nissan dealer located in Vineland, New Jersey. (Doc. No. 1 ¶¶ 2, 4.)
The Vehicle came with a 2009 New Vehicle Limited Warranty, which "covers any repairs
needed to correct defects in materials or workmanship" of various parts and components of the
Vehicle. At the time of purchase, Plaintiff lived in Wildwood, New Jersey.

---

[1] Unless otherwise indicated, the facts in this section are undisputed and taken from Plaintiff's Response to
Defendant's Statement of Undisputed Material Facts. (Doc. No. 47.)

1

The day of purchase, Plaintiff allegedly discovered that the Vehicle exhibited an abnormal vibration when operating at highway speeds, and called Team to report the vibration. Plaintiff brought the Vehicle to Team on May 13, 2009, complaining that a vibration occurred when the Vehicle was operated at 60 miles per hour. Team balanced the tires. (Doc. No. 1-3 at 1.) Plaintiff brought the Vehicle back to Team on May 20, 2009, complaining that the vibration continued to occur; however, Team found no problems and did not perform any repairs. (Doc. No. 1-4 at 1.) Plaintiff brought the Vehicle back to Team a third time on May 29, 2009, with the same complaint. Team adjusted the front toe-in. (Doc. No. 1-5 at 1–2.)

On June 5, 2009, Plaintiff took the Vehicle to Admiral Nissan ("Admiral"), another authorized Nissan Dealer located in Pleasantville, New Jersey, with the same complaint of vibration at highway speeds. Plaintiff subsequently brought the Vehicle back to Team on December 9, 2009, for the same vibration issue. Team reported that its service department was unable to replicate the vibration and did not do any repairs to the Vehicle. (Doc. No. 1-7 at 1.) Plaintiff then returned to Admiral on February 13, 2010, for the same issue, at which time Admiral performed work to address the vibration. (Doc. Nos. 1 ¶ 26; 1-8 at 1.)

On March 30, 2010, Plaintiff brought the Vehicle in to Victory Nissan West ("Victory"), an authorized Nissan dealer located in Dickson, Tennessee, for the same vibration issue. Victory suggested Plaintiff put Michelin tires on the Vehicle to improve the vibration. (Doc. No. 1-9 at 1.) Plaintiff subsequently took the Vehicle to a tire dealer and replaced the factory tires with Bridgestone tires. (Doc. No. 1-10 at 1.) However, Plaintiff alleges the new tires did not correct the condition, and he ended up bringing the Vehicle back to Victory on June 7, 2010, with the same complaint. (Doc. Nos. 1 ¶ 30; 1-11 at 1.) At this point the Vehicle's odometer read 34,053 miles.

2

Plaintiff traded the Vehicle in to Victory on June 15, 2011—just under three months after filing this suit—and received $14,400.00 as a trade-in allowance to use towards the purchase of another vehicle, even though at the time of the trade-in, the vibration had not been corrected.

### B. Procedural History

Plaintiff filed a Complaint in this Court on March 31, 2011, alleging statutory violations based on Defendant's alleged breach of express and implied warranties, and breach of contract. (Doc. No. 1.) Defendant filed a Motion for Summary Judgment on March 28, 2013 (Doc. No. 36), with a Memorandum in Support (Doc. No. 38), a Statement of Undisputed Material Facts (Doc. No. 37), and supporting exhibits (Doc. Nos. 36-1 to 36-3). On the same date, Defendant filed its Motion to Exclude (Doc. No. 34), with a Memorandum in Support (Doc. No. 35), and supporting exhibits (Doc. Nos. 34-1 to 34-3.)

Plaintiff filed a Response opposing Defendant's Motion to Exclude on April 19, 2013. (Doc. No. 44.) Plaintiff also filed a Response to Defendant's Motion on April 25, 2013 (Doc. No. 46), with a Memorandum in Support (Doc. No. 48), a Response to Defendant's Statement of Undisputed Material Facts (Doc. No. 47), and supporting exhibits (Doc. Nos. 48-1 to 48-2).

Defendant filed a motion for leave to file a reply in support of its Motion to Exclude on April 24, 2013 (Doc. No. 45), along with its proposed Reply (Doc. No. 45-1). Defendant then filed a Reply in support of its Motion on May 3, 2013. (Doc. No. 49.)

## II.  LEGAL STANDARD

Summary judgment is rendered when "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must demonstrate that the non-moving party has failed to establish a necessary element of that party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment will be granted if "the evidence is so one-sided that one party must prevail as a matter

3

of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir. 1996). The movant has the initial burden of informing the district court of the basis of the summary judgment motion and identifying portions of the record which lack a genuine issue of material fact to support the non-movant's case. *See Celotex*, 477 U.S. at 323.

The non-moving party may not rest solely on the allegations in the complaint, but must delineate specific evidence that shows there is a genuine issue for trial. *See id.* at 324. A "mere possibility" of a factual dispute is not sufficient to withstand a properly supported motion for summary judgment. *Baird v. NHP Mill Creek Apartments*, 94 F. App'x 328, 330–31 (6th Cir. 2004) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). A dispute about a material fact is genuine if a reasonable fact finder could find for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A party asserting or denying that a fact is genuinely disputed may support its position by (1) citing to particular parts of materials in the record, (2) showing that the materials cited by the opposing party do not establish the absence or presence of a genuine dispute, or (3) showing that an adverse party cannot produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1).

All reasonable inferences are to be drawn in favor of the non-moving party and the evidence of the non-movant is to be believed. *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment." *Id.* If the court determines that a reasonable fact finder could not find for the non-moving party, summary judgment must be granted. *See Lexington-South Elkhorn Water Dist.*, 93 F.3d at 233.

4

## III. ANALYSIS

In his Complaint, Plaintiff alleges that in failing to repair the abnormal vibration in Plaintiff's vehicle, Defendant violated: (1) the Tennessee Motor Vehicle Warranties Act, (2) the New Jersey Motor Vehicle Warranty Act, (3) the Magnuson-Moss Warranty Improvement Act ("MMWA"), (4) the Tennessee Uniform Commercial Code, and (5) the Tennessee Consumer Protection Statute ("TCPA"). (Doc. No. 1 ¶¶ 32–87.) Defendant argues it is entitled to summary judgment as to each of Plaintiff's claims. The Court evaluates each claim in turn.

### A. Withdrawn Claims

Plaintiff agrees that the Court should dismiss his claims under the Tennessee Uniform Commercial Code (Doc. No. 48 at 9), and withdraws his claims under the Tennessee Motor Vehicle Warranties Act and the New Jersey Motor Vehicle Warranty Act (*id.* at 12), in part due to the fact that Plaintiff no longer has title or possession of the Vehicle. Accordingly, the Court **DISMISSES with prejudice** Plaintiff's claims under the Tennessee Uniform Commercial Code, the Tennessee Motor Vehicle Warranties Act, and the New Jersey Motor Vehicle Warranty Act.

### B. Magnusson-Moss Warranty Improvement Act

Defendant argues Plaintiff has failed to bring forth evidence to prove the Vehicle's vibration was caused by a defect in materials and workmanship, which is necessary to prove his breach of express warranty claim. (Doc. Nos. 38 at 8–9; 49 at 4–6.) Defendant then reasons that because Plaintiff has conceded his breach of contract and implied warranties claim under the Tennessee Uniform Commercial Code, Plaintiff's only remaining allegation that Defendant violated the MMWA, is to the extent Defendant breached its express warranty under state law. Thus, Defendant argues that because Plaintiff's evidence is insufficient to prove breach of express warranty, Plaintiff's claims under the MMWA also fail. (Doc. No. 38 at 10.) Plaintiff

5

responds that his MMWA claim should survive because he has presented sufficient evidence to show Defendant breached its express warranty by failing to repair the Vehicle in a reasonable period of time, in accordance with the warranty's terms. (Doc. No. 48 at 11.) Plaintiff further argues he has presented sufficient evidence to prove the Vehicle suffered from a defect. (*Id.*)

The MMWA provides that "a consumer who is damaged by the failure of a . . . warrantor . . . under a written warranty . . . may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1) (2012). However, federal court jurisdiction for such claims is contingent on the plaintiff satisfying an amount in controversy requirement of "$50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit." § 2310(d)(3)(B). It is well-settled that "[w]hen a statute conditions federal court jurisdiction on the satisfaction of an amount in controversy requirement, the failure to meet that specified amount divests the federal courts of subject matter jurisdiction." *Schultz v. Gen. R.V. Ctr.*, 512 F.3d 754, 756 (6th Cir. 2008).

Although the parties to this action decline to address the amount in controversy requirement of the MMWA, the Court finds it necessary to examine whether Plaintiff has met this threshold requirement to confer subject-matter jurisdiction on the Court before moving forward with the merits of the case. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Franzel v. Kerr Mfg. Co.*, 959 F.2d 628, 630 (6th Cir. 1992) ("Unlike other issues not involving the merits of a case, subject-matter jurisdiction may be raised at any time, by any party or even *sua sponte* by the court itself.").

The Sixth Circuit first addressed the issue of how to calculate the amount in controversy for the purposes of the MMWA in *Golden v. Gorno Bros., Inc.*, 410 F.3d 879 (6th Cir. 2005).

Relying on holdings in the Third and Seventh Circuits, the court in *Golden* determined that, when a plaintiff seeks the remedy of revocation of acceptance, the amount in controversy should be calculated by determining the difference between the price paid for the vehicle and its present value, minus the value the plaintiff received from use of the vehicle. *Id.* at 885. The court also held that the finance charges associated with the sales contract of the vehicle may never be counted towards the amount in controversy for the purposes of satisfying the MMWA requirement. *Id.*

Subsequently, the Sixth Circuit determined that the formula for determining the amount in controversy for a case in which the plaintiff seeks the remedy of rescission under the MMWA is simply the amount of the contract, without offset for the vehicle's present value or value obtained through use. *Harnden v. Jayco, Inc.*, 496 F.3d 579, 582 (6th Cir. 2007). The *Harnden* court followed *Golden* to hold that finance charges should never be included in an amount in controversy calculation under the MMWA, and thus the contract amount should be reduced to the pre-tax amount the plaintiff would have paid had he or she paid the contract in cash. *Id.* at n.1.

Here, based on Plaintiff's remaining claims, he seeks remedies for breach of warranty and under the TCPA, including treble damages. Plaintiff alleges he paid $32,287.84 for the Vehicle. (Doc. No. 48 at 1.) However, the Retail Installment Contract lists the cash price of the Vehicle, before taxes, as $25,658.85. (Doc. No. 1-1 at 1.) Although the parties do not discuss the present value of the Vehicle, it is undisputed that on or about June 15, 2011, Plaintiff traded in the Vehicle at Victory and received $14,400.00 in trade-in value. (Doc. Nos. 21-2 at 1; 47 at 4.) The parties also do not analyze the usage value Plaintiff obtained from the Vehicle. However, the Court notes that, in the 26 months Plaintiff owned the Vehicle, it appears he drove

7

it approximately 57,200 miles, or around 26,400 miles per year. (*See* Doc. Nos. 17-4 at 2; 34-2 at 19.)

As Plaintiff no longer owns the vehicle, he cannot request the Court rescind the sale contract; thus, the Court calculates the amount in controversy using the formula set forth in *Golden.* Considering the evidence in the light most favorable to Plaintiff, the Court finds Plaintiff cannot meet the amount in controversy requirement necessary to allow this Court jurisdiction over his MMWA claim. Given the purchase price of the Vehicle of $25,658.85 and the value Plaintiff received upon trading in the Vehicle of $14,400.00, the total amount Plaintiff could seek based on his breach of express warranty claim would be no more than $11,258.85. In all likelihood, however, this amount would be reduced by the value Plaintiff obtained from his use of the Vehicle. As such, even if Plaintiff could prove he is entitled to treble damages under his TCPA claim, the most the amount in controversy could possibly amount to, for purposes of the MMWA, is $33,776.55. The Court, accordingly, lacks subject-matter jurisdiction over Plaintiff's MMWA claim, and it is hereby **DISMISSED without prejudice**.

C.  *Tennessee Consumer Protection Act*

Prior to evaluating the merits of Plaintiff's TCPA claim, the Court must determine whether it presently has subject-matter jurisdiction to adjudicate the claim. *See Ky. Press Ass'n v. Kentucky*, 454 F.3d 505, 508–09 (6th Cir. 2006) (explaining federal courts have "an independent duty to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction") (internal quotation marks omitted) (citing *Patsy v. Bd. of Regents*, 457 U.S. 496, 525 (1982) ("[As it] would be an unconstitutional invasion of the powers reserved to the states if the federal courts were to entertain cases not within their jurisdiction, . . . the party seeking to invoke the jurisdiction of a federal court must demonstrate that the case is within the competence

8

of that court.") (Powell, J., dissenting)). Plaintiff brings this suit pursuant to the Court's original jurisdiction over actions "arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331 (2012). (Doc. No. 1 ¶ 1.) However, upon dismissing Plaintiff's only federal claim, subject-matter jurisdiction will only exist if there is a diversity of citizenship between the parties. *See* 28 U.S.C. § 1332 (2012). As Plaintiff alleges in his Complaint both that he is a citizen of Tennessee and that Defendant is a corporation with its principal place of business in Tennessee (Doc. No. 1 ¶ 2–3), the Court finds no diversity of citizenship exists between the parties.[2] As such, the Court holds it does not have subject-matter jurisdiction to adjudicate Plaintiff's claim under the TCPA, and Plaintiff's TCPA claim is **DISMISSED without prejudice**.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. No. 36) is **GRANTED** and Defendant's Motion to Exclude (Doc. No. 34) is **TERMINATED AS MOOT**. This case is hereby **DISMISSED**.

It is so ORDERED.

Entered this ___20___ day of December, 2013.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[2] The Court notes that such jurisdiction also requires an amount in controversy of $75,000.00 exclusive of costs and interests. 28 U.S.C. § 1332 (2012). Thus, even were the parties to be diverse, the Court's analysis under the MMWA dictates that this amount would similarly not be met to sustain jurisdiction.

9